# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SUZANNE L. BONNER,** | : | **Civil No.  1:19-CV-1370** |
| | : | |
| **Plaintiff** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **v.** | : | |
| | : | |
| **ANDREW M. SAUL** | : | |
| **Commissioner of Social Security**[1] | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM OPINION

### I.    Introduction

The Supreme Court has recently underscored for us the limited scope of our

review when considering Social Security appeals, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout
> administrative law to describe how courts are to review agency
> factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——,
> 135 S. Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-
> evidence standard, a court looks to an existing administrative record
> and asks whether it contains "sufficien[t] evidence" to support the
> agency's factual determinations. Consolidated Edison Co. v. NLRB,
> 305 U.S. 197, 229, 59 S. Ct. 206, 83 L.Ed. 126 (1938) (emphasis
> deleted). And whatever the meaning of "substantial" in other contexts,
> the threshold for such evidentiary sufficiency is not high. Substantial
> evidence, this Court has said, is "more than a mere scintilla." Ibid.; see,
> e.g., Perales, 402 U.S. at 401, 91 S. Ct. 1420 (internal quotation marks

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Commissioner
of Social Security, Andrew Saul, is automatically substituted as the defendant in
place of the former Acting Commissioner of Social Security. Fed. R. Civ. P. 25(d).

omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison, 305 U.S. at 229, 59 S. Ct. 206. See Dickinson v. Zurko, 527 U.S. 150, 153, 119 S. Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019).

In the instant case, the plaintiff, Suzanne Bonner applied for disability insurance benefits and supplemental security income under Title II and Title XVI of the Social Security Act on October 27, 2015, alleging disability due to depression, panic attacks, osteoporosis, degenerative disc disease, back pain, nerve damage Charcot-Marie-Tooth disease (CMT), adhesions, endometriosis, methadone for pain, hypothyroidism, pelvic pain, abdominal pain, skin conditions, folliculitis, and nerve pain. (Tr. 112-13). However, after consideration of the medical records and opinion evidence, including the objective diagnostic tests and clinical findings on Bonner's physical and mental examinations, Bonner's longitudinal treatment history, and her documented activities of daily living, the Administrative Law Judge ("ALJ") who reviewed this case concluded that Bonner could perform a limited range of sedentary work and denied her disability applications.

Mindful of the fact that substantial evidence "means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" Biestek, 139 S. Ct. at 1154, we find that substantial evidence supported the ALJ's

findings in this case. Therefore, for the reasons set forth below, we will affirm the decision of the Commissioner denying this claim.

## II.   <u>Statement of Facts and of the Case</u>

On October 27, 2015, Suzanne Bonner applied for disability insurance benefits and supplemental security income benefits, alleging an onset date of disability beginning February 1, 2011 due to depression, panic attacks, osteoporosis, degenerative disc disease, back pain, nerve damage disease CMT, adhesions, endometriosis, methadone for pain, hypothyroidism, pelvic pain, abdominal pain, skin conditions, folliculitis, and nerve pain. (Tr. 15, Tr. 112-13). Upon review, and noting that Bonner had previously submitted an unsuccessful disability application which encompassed some of the same time frame, the ALJ revised the relevant period for Bonner's disability claim to August 21, 2015 to account for this prior unsuccessful disability application. (Tr. 18). Bonner has a high school education, some college education, and a certificate in travel and tourism. (Tr. 37). Bonner was a younger worker, approximately 43 years old at the time of the alleged onset date of her disability, and had prior employment as a customer service representative, fast food laborer, telephone operator, brokerage specialist, and receptionist. (Tr. 112, 195).

3

The medical record in this case is mixed and equivocal but contains substantial evidence which indicates that Bonner retained the capacity to perform some work. Specifically, Bonner has a long history of musculoskeletal and neuropathic pain, hypothyroidism, and mental health issues. (Tr. 23). Bonner alleges that her disability stems from her physical and mental impairments, which cause numbness, coordination deficits, diminished grip strength, tremors, sleep disturbances, mood swings, anxiety, panic attacks, and depression. (Id.). Bonner testified and reported that these symptoms affect her ability to walk, sit, and stand, as she cannot sit longer than 20 minutes or stand longer than ten minutes. (Tr. 42, 242). Bonner further reported that her conditions affect her ability to lift, squat, bend, reach, kneel, hear, see, climb stairs, retain information, complete tasks, concentrate, and use her hands. (Tr. 242).

On this score, Bonner's treatment history discloses that in September 2015, Bonner visited Susquehanna Health concerning complaints of lower back pain radiating to her right hip, SI joint, and right lower extremity. (Tr. 1181). Bonner described the pain as a burning shooting and tingling sensation. (Id.). An MRI revealed an L5-S1 posterior disk bulging but no evidence of spinal cord compression and physical examination revealed only minimal tenderness in the lower lumbar spine, a positive FABERS test on the right, and limited range of motion. (Tr. 23,

1181). Bonner otherwise exhibited 5/5 strength in all major muscle groups, 2/4 reflexes, intact sensation, a normal gait, and a negative straight leg raising test. (Tr. 23).

In November 2015, a physical examination revealed that Bonner had tenderness over the lumbar facet joints, coccyx, SI joint, and right hip, crepitance in both knees, and lumbar range of motion deficits. (Tr. 506-11). Additionally, upon examination, Bonner had 5/5 strength, a normal range of motion in the right hip, intact sensation, normal reflexes, a normal gait, and a normal straight leg raising test. (Tr. 510). The treatment notes further demonstrated that Bonner had underwent a series of injections and radiofrequency ablation, which proved successful. (Tr. 514).

Despite these very limited abnormal medical findings, in June 2015, Bonner was examined by Dr. Kathy Nase, who completed a medical assessment form. (Tr. 1251-53). In the assessment, Dr. Nase concluded that Bonner was permanently disabled. (Tr. 1252). In January 2016, Bonner was seen again at Susquehanna Health concerning more lower back pain. (Tr. 1198). Bonner rated her pain from four to seven on an ascending scale, but denied radicular symptoms. (Tr. 1198, 1202-03). While Bonner displayed a painful range of motion, she otherwise exhibited normal muscle tone, strength, posture, and gait. (Tr. 1198, 1202-03). Further, the medical record demonstrated that through November 2017, Bonner's physical examinations

revealed nothing more than lumbar and hip tenderness and range motion deficits. (Tr. 1961, 1979, 2002, 2008, 2014, 2031, 2052).

In January 2016, Bonner was examined by Dr. Louis Bonita, who prepared a Physical Residual Functional Capacity Statement. (Tr. 133-135). In the medical source statement, Dr. Bonita opined that Bonner could perform a limited range of light work. (Tr. 24-25). Specifically, Dr. Bonita opined that Bonner could occasionally lift and carry 20 pounds, frequently lift and carry ten pounds, she could stand, and walk for approximately six hours in an eight-hour workday, and she could sit for approximately six hours in an eight-hour workday. (Tr. 133). Following, Dr. Bonita's finding limiting Bonner to a limited range of light work, Bonner was examined by Nurse Practitioner David Peterson in May 2016, who completed a medical assessment form. (Tr. 1188-89). In the medical assessment form, Nurse Practitioner Peterson opined that Bonner was temporarily disabled until October 1, 2016. (Tr. 1188).

In January 2018, Bonner was examined by an unknown medical source, who completed a medical statement regarding Bonner's physical abilities and limitations.[2] (Tr. 2062-63). In the form, the medical source opined that Bonner could

---

[2] The ALJ noted that a medical statement was completed by an unknown medical source because the signature of the medical source was not legible.

perform a limited range of medium work. (Tr. 25). Specifically, the medical source opined that Bonner could work for approximately two hours a day, she could only stand for 30 minutes at one time, could only stand for 60 minutes in an eight-hour workday, could only sit for 60 minutes at one time, and could only sit for two hours in an eight-hour workday. (Tr. 2062). The unknown medical source further opined that Bonner could occasionally lift 50 pounds, frequently lift 20 pounds, and occasionally bend and squat. (Id.).

As for her mental health impairments, treatment notes from August and November 2015 revealed that Bonner was alert, cooperative, and clean, that she exhibited normal speech, a good mood, a full affect, logical thoughts, normal thought content, intact memory, intact attention and concentration, and good insight and judgement. (Tr. 418-19, Tr. 421-22). In December 2015, Bonner was examined by Dr. Francis Murphy who completed a Psychiatric Review Technique and a Mental Residual Functional Capacity Assessment. (Tr. 135-36). In the Psychiatric Review Technique assessment, Dr. Murphy opined that Bonner had mild limitations in her activities of daily living, moderate limitations in maintaining concentration, persistence, or pace, and no limitations in social functioning and episodes of decompensation, each of extended duration. (Tr. 131-32). In the Mental Residual Functional Capacity Assessment, Dr. Murphy examined Bonner under the following

7

categories of limitation: (1) understanding and memory, (2) sustained concentration and persistence, (3) social interaction, and (4) adaption. (Tr. 135). Dr. Murphy opined that Bonner had no limitations in the categories of understanding and memory, social interaction, and adaption, but had moderate limitations in the category of sustained concentration and persistence.[3] (Tr. 24, 135-36)

In May 2016, Bonner complained of flashbacks, but otherwise exhibited a normal attitude, a euthymic mood, a normal affect, and normal thought content. (Tr. 1071-72). During her October follow-up, treatment notes revealed that while Bonner appeared anxious "at times," she had a "fairly bright" affect. (Tr. 878). Further, the treatment notes revealed that Bonner displayed normal speech, intact memory, logical thought forms, intact attention and concentration, and good insight and judgement. (Id.). The medical record also demonstrated that Bonner denied suicidal and homicidal ideation, self-injurious behavior, paranoid delusions, impulsive behavior, obsessions, and auditory, visual, and tactile hallucinations. (Id.). In April 2017, Bonner reported increased anxiety, but did not need an increase in her

---

[3] In the ALJ's decision, the ALJ indicated that Dr. Francis Murphy opined that Bonner had mild limitations in the category of social interaction. (Tr. 24). The medical record, however, reflects that Dr. Murphy opined that Bonner had no limitations in the category of social interaction. (Tr. 136). We find that while the ALJ committed a typographical error, the error favors the claimant's position. Therefore, the error is harmless and will not lead to a different result in this case as mentioned infra.

medication. (Tr. 24). In September 2017, the treatment notes revealed that Bonner was somewhat anxious, but otherwise exhibited normal psychomotor activity, normal speech, linear thoughts, normal thought content and baseline cognitive functioning. (Tr. 858). In November 2017, Bonner also exhibited relatively normal mental status findings, including fluent speech, coherent thought processes, good insight, normal thought content, intact recent and remote memory, intact cognitive functioning, a neutral mood, and an appropriate affect. (Tr. 2053).

Bonner applied for disability insurance benefits and supplemental security income on October 27, 2015, and her applications for benefits were denied on August 9, 2017. (Tr. 15). Thereafter, Bonner filed a written request for a hearing on March 4, 2016, and a hearing was held on January 22, 2018. (Tr. 15, 32). At the hearing both Bonner and a Vocational Expert testified. (Tr. 15). By a decision dated July 20, 2018, the ALJ denied Bonner's applications for benefits. (Tr. 12).

In that decision, the ALJ first concluded that Bonner met the insured status requirements of the Social Security Act through March 31, 2017, and had not engaged in any substantial gainful activity since her alleged onset date of disability on August 21, 2015. (Tr. 18). At Step 2 of the sequential analysis that governs Social Security cases, the ALJ found that Bonner had the following severe impairments: degenerative disc disease, radiculopathy, sacroiliitis, carpal tunnel syndrome,

degenerative joint disease of the left knee, enthesopathy of the hip region, history of Charcot-Marie-Tooth disorder, obesity, hypothyroidism, post-traumatic stress disorder (PTSD), depression, anxiety, panic disorder, and borderline traits. (Tr. 18). The ALJ concluded that these impairments significantly limited Bonner's ability to perform basic work activities. (Id.). At Step 3, the ALJ determined that Bonner did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Id.).

Between Steps 3 and 4, the ALJ fashioned a residual functional capacity (RFC), considering Bonner's limitations from her impairments:

> After careful consideration of the entire record, I find that the claimant has the [RFC] to perform less than a full range of sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a). She can occasionally balance, stoop, kneel, crouch, crawl, and climb ladders, ramps, ropes, scaffolds, and stairs. She must avoid concentrated exposure to workplace hazards, such as unprotected heights and dangerous, moving machinery. She is further limited to unskilled work involving only simple, routine tasks that are not performed at a production rate pace.

(Tr. 22).

Specifically, in making the RFC determination, the ALJ accorded some weight to the opinion of Dr. Bonita. (Tr. 24). Dr. Bonita opined that Bonner could occasionally lift and carry 20 pounds, frequently lift and carry ten pounds, she could stand, and walk for approximately six hours in an eight-hour workday, and she could sit for approximately six hours in an eight-hour workday. (Tr. 133). The ALJ only

afforded some weight to Dr. Bonita's opinion, concluding that Dr. Bonita's limitation to the light exertional level was inconsistent with the record, which suggested that Bonner was somewhat more limited in her physical capabilities. (Tr. 25). The ALJ explained that Bonner's structural abnormalities, pain, and obese body habitus supported limiting her to less than a full range of sedentary work. (Id.).

The ALJ accorded little weight to Dr. Nase's opinion, concluding that Bonner was permanently disabled. (Id.). The ALJ explained that Dr. Nase's opinion was inconsistent with the record, particularly Bonner's negative findings, daily activities, and limited treatment protocol. (Id.). The ALJ further reasoned that Dr. Nase did not provide supportive limitations, including a function-by-function breakdown of the most Bonner could still do, despite her limitations. (Id.).

The ALJ accorded little weight to Nurse Practitioner Peterson's opinion, who opined that Bonner was temporarily disabled until October 1, 2016. (Id.). The ALJ explained that Nurse Practitioner Peterson's opinion was provisional and not indicative of Bonner's RFC. (Id.). The ALJ also explained that Nurse Practitioner Peterson did not provide supportive limitations. (Id.).

Further, the ALJ accorded little weight to the opinion of the unknown medical source of record. (Id.). The unknown medical source of record opined that Bonner could work for approximately two hours a day, she could only stand for 30 minutes

11

at one time, could only stand for 60 minutes in an eight-hour workday, could only sit for 60 minutes at one time, and could only sit for two hours in an eight-hour workday. (Tr. 2062). The unknown medical source further opined that Bonner could occasionally lift 50 pounds, frequently lift 20 pounds, and occasionally bend and squat. (Id.).

The ALJ afforded this opinion little weight, finding that the limitation to the medium exertional level was inconsistent with the claimant's structural abnormalities, pain, and obese habitus. (Id.). The ALJ further stated that because he could not identify the provider, he was unable to verify their qualifications or their treatment history with the claimant, both of which were vital in assigning weight to a medical opinion. (Id.).

Lastly, the ALJ accorded great weight to the psychiatric opinion of Dr. Murphy. (Tr. 24). Dr. Murphy completed both a Psychiatric Review Technique Assessment and a Mental Residual Functional Capacity Statement. (Tr. 24). In the Psychiatric Review Technique Assessment, Dr. Murphy opined that Bonner had mild limitations in her activities of daily living, moderate limitations in maintaining concentration, persistence, or pace, and no limitations in social functioning and episodes of decompensation, each of extended duration. (Tr. 131-32). In the Mental Residual Functional Capacity Assessment, Dr. Murphy examined Bonner under the

12

following categories of limitation: (1) understanding and memory, (2) sustained concentration and persistence, (3) social interaction, and (4) adaption. (Tr. 135). Dr. Murphy opined that Bonner had no limitations in the categories of understanding and memory, social interaction, and adaption, but had moderate limitations in the category of sustained concentration and persistence. (Tr. 24, 135-36). The ALJ accorded great weight to Dr. Murphy's opinions, concluding that Dr. Murphy's findings were consistent with the record as fully detailed in the "paragraph B" criteria analysis set forth in his decision. (Tr. 24). The ALJ further concluded that Dr. Murphy's opinion effectively balanced Bonner's negative and positive medical findings. (Id.).

Having arrived at this RFC assessment for Bonner based upon a careful evaluation of these various medical opinions, many of which supported a conclusion that Bonner could work, the ALJ found at Step 5 that, while Bonner could not return to her prior occupations, there were other sedentary jobs in the national economy which she could perform. (Tr. 26). Accordingly, the ALJ concluded that Bonner did not meet the stringent standard for disability set by the Act and denied her disability claims. (Id.).

This appeal followed. (Doc. 1). On appeal, Bonner contends that the ALJ's decision is not based on substantial evidence required under 42 U.S.C. § 405(g)

because the ALJ erred in assessing the medical opinion of the treating physicians of record and because the ALJ erred in his conclusions concerning her RFC. (Doc. 11 p. 7). This case is fully briefed and is, therefore, ripe for resolution. For the reasons set forth, under the deferential standard of review that applies here, the Commissioner's final decision is affirmed.

## III.   Discussion

### A.   Substantial Evidence Review – the Role of this Court

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.  See 42 U.S.C. §405(g); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Ficca v. Astrue, 901 F. Supp.2d 533, 536 (M.D.Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988).  Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402 U.S. 389, 401 (1971).  A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence.  Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir.

14

1993).  But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966).  "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." Leslie v. Barnhart, 304 F. Supp.2d 623, 627 (M.D.Pa. 2003).

The Supreme Court has recently underscored for us the limited scope of our review in this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." Ibid.; see, e.g., Perales, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison, 305 U.S. at 229, 59 S.Ct. 206. See Dickinson v. Zurko, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019).

The question before this Court, therefore, is not whether the claimant is disabled, but rather whether the Commissioner's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law.  See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D.Pa. Mar. 11, 2014)("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.")(alterations omitted); Burton v. Schweiker, 512 F. Supp. 913, 914 (W.D.Pa. 1981)("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); see also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990)(noting that the scope of review on legal matters is plenary); Ficca, 901 F. Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

Several fundamental legal propositions which flow from this deferential standard of review. First, when conducting this review "we are mindful that we must not substitute our own judgment for that of the fact finder." Zirnsak v. Colvin, 777 F.3d 607, 611 (3d Cir. 2014) (citing Rutherford, 399 F.3d at 552). Thus, we are enjoined to refrain from trying to re-weigh the evidence. Rather our task is to simply determine whether substantial evidence supported the ALJ's findings. However, we must also ascertain whether the ALJ's decision meets the burden of articulation demanded by the courts to enable informed judicial review. Simply put, "this Court

16

requires the ALJ to set forth the reasons for his decision." <u>Burnett v. Comm'r of Soc.</u>

<u>Sec. Admin.</u>, 220 F.3d 112, 119 (3d Cir. 2000). As the Court of Appeals has noted

on this score:

> In <u>Burnett</u>, we held that an ALJ must clearly set forth the reasons for
> his decision. 220 F.3d at 119. Conclusory statements . . . are
> insufficient. The ALJ must provide a "discussion of the evidence" and
> an "explanation of reasoning" for his conclusion sufficient to enable
> meaningful judicial review. <u>Id</u>. at 120; <u>see Jones v. Barnhart</u>, 364 F.3d
> 501, 505 & n. 3 (3d Cir.2004). The ALJ, of course, need not employ
> particular "magic" words: "<u>Burnett</u> does not require the ALJ to use
> particular language or adhere to a particular format in conducting his
> analysis." <u>Jones</u>, 364 F.3d at 505.

<u>Diaz v. Comm'r of Soc. Sec.</u>, 577 F.3d 500, 504 (3d Cir. 2009).

Thus, in practice ours is a twofold task. We must evaluate the substance of the

ALJ's decision under a deferential standard of review, but we must also give that

decision careful scrutiny to ensure that the rationale for the ALJ's actions is

sufficiently articulated to permit meaningful judicial review.

### B.     Initial Burdens of Proof, Persuasion, and Articulation for the ALJ

To receive benefits under the Social Security Act by reason of disability, a

claimant must demonstrate an inability to "engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which can

be expected to result in death or which has lasted or can be expected to last for a

continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); 42 U.S.C.

§1382c(a)(3)(A); see also 20 C.F.R. §§404.1505(a), 416.905(a).   To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy.   42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a).   To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured.   42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process.   20 C.F.R. §§404.1520(a), 416.920(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC").   20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

Between Steps 3 and 4, the ALJ must also assess a claimant's residual functional capacity (RFC).   RFC is defined as "that which an individual is still able

to do despite the limitations caused by his or her impairment(s)." Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R. §§404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1).   In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis.   20 C.F.R. §§404.1545(a)(2), 416.945(a)(2).

There is an undeniable medical aspect to an RFC determination, since that determination entails an assessment of what work the claimant can do given the physical limitations that the claimant experiences. Yet, when considering the role and necessity of medical opinion evidence in making this determination, courts have followed several different paths. Some courts emphasize the importance of medical opinion support for an RFC determination and have suggested that "[r]arely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant." Biller v. Acting Comm'r of Soc. Sec., 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013) (quoting Gormont v. Astrue, Civ. No. 11–2145, 2013 WL 791455 at *7 (M.D. Pa. Mar. 4, 2013)). In other instances, it has been held that: "There is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." Titterington v. Barnhart, 174 F. App'x 6, 11

19

(3d Cir. 2006). Further, courts have held in cases where there is no evidence of any credible medical opinion supporting a claimant's allegations of disability that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." <u>Cummings v. Colvin</u>, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).

These seemingly discordant legal propositions can be reconciled by evaluation of the factual context of these decisions. Those cases which emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting where a well-supported medical source has opined regarding limitations which would support a disability claim, but an ALJ has rejected the medical opinion which supported a disability determination based upon a lay assessment of other evidence. In this setting, these cases simply restate the commonplace idea that medical opinions are entitled to careful consideration when making a disability determination, particularly when those opinions support a finding of disability. In contrast, when an ALJ is relying upon other evidence, such as contrasting clinical or opinion evidence or testimony regarding the claimant's activities of daily living, to fashion an RFC courts have adopted a more pragmatic view and have sustained the ALJ's exercise of independent judgment based upon all of the facts and evidence. <u>See Titterington v. Barnhart,</u> 174 F. App'x 6, 11 (3d Cir.

2006); Cummings v. Colvin, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015). In either event, once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence. Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir. 2002); see also Metzger v. Berryhill, No. 3:16-CV-1929, 2017 WL 1483328, at *5 (M.D. Pa. Mar. 29, 2017), report and recommendation adopted sub nom. Metzgar v. Colvin, No. 3:16-CV-1929, 2017 WL 1479426 (M.D. Pa. Apr. 21, 2017); Rathbun v. Berryhill, No. 3:17-CV-00301, 2018 WL 1514383, at *6 (M.D. Pa. Mar. 12, 2018), report and recommendation adopted, No. 3:17-CV-301, 2018 WL 1479366 (M.D. Pa. Mar. 27, 2018).

At Steps 1 through 4, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. Mason, 994 F.2d at 1064. Once this burden has been met by the claimant, it shifts to the Commissioner at Step 5 to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. §§404.1512(f), 416.912(f); Mason, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981).  Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id. at 706-707.  In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck v. Comm'r of Soc. Sec., 181 F. 3d 429, 433 (3d Cir. 1999).

## C.   Legal Benchmarks for the ALJ's Assessment of Medical Opinion and Lay Evidence

The Commissioner's regulations also set standards for the evaluation of medical evidence, and define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [a claimant's] symptoms, diagnosis and prognosis, what [a claimant] can still do despite impairments(s), and [a claimant's] physical or mental restrictions." 20 C.F.R.

§404.1527(a)(2). Regardless of its source, the ALJ is required to evaluate every medical opinion received. 20 C.F.R. §404.1527(c). However, it is important to note that the regulations in existence at the time of this ALJ hearing drew a distinction between opinions from acceptable medical sources, and other opinion evidence, and afforded greater weight to acceptable medical source opinions. Huge v. Colvin, No. 3:16-CV-641, 2017 WL 4225044, at *11 (M.D. Pa. Sept. 22, 2017).

In deciding what weight to accord to competing medical opinions and evidence, the ALJ is guided by factors outlined in 20 C.F.R. §404.1527(c). "The regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker." SSR 96-6p, 1996 WL 374180 at *2. Treating sources have the closest ties to the claimant, and therefore their opinions are generally entitled to more weight. See 20 C.F.R. §404.1527(c)(2)("Generally, we give more weight to opinions from your treating sources..."); 20 C.F.R. §404.1502 (defining treating source). Under some circumstances, the medical opinion of a treating source may even be entitled to controlling weight. 20 C.F.R. §§04.1527(c)(2); see also SSR 96-2p, 1996 WL 374188 (explaining that controlling weight may be given to a treating source's medical opinion only where it is well-supported by medically acceptable clinical and

laboratory diagnostic techniques, and it is not inconsistent with the other substantial evidence in the case record).

Where no medical source opinion is entitled to controlling weight, the Commissioner's regulations direct the ALJ to consider the following factors, where applicable, in deciding the weight given to any non-controlling medical opinions: length of the treatment relationship and frequency of examination; nature and extent of the treatment relationship; the extent to which the source presented relevant evidence to support his or her medical opinion, and the extent to which the basis for the source's conclusions were explained; the extent to which the source's opinion is consistent with the record as a whole; whether the source is a specialist; and, any other factors brought to the ALJ's attention. 20 C.F.R. §404.1527(c).

At the initial level of administrative review, State agency medical and psychological consultants may act as adjudicators. See SSR 96-5p, 1996 WL 374183 at *4. As such, they do not express opinions; they make findings of fact that become part of the determination. Id. However, 20 C.F.R. §404.1527(e) provides that at the ALJ and Appeals Council levels of the administrative review process, findings by nonexamining State agency medical and psychological consultants should be evaluated as medical opinion evidence. Therefore, ALJs must consider these opinions as expert opinion evidence by nonexamining physicians and must address

these opinions in their decisions. SSR 96-5p, 1996 WL 374183 at *6. Opinions by State agency consultants can be given weight "only insofar as they are supported by evidence in the case record." SSR 96-6p, 1996 WL 374180 at *2. In appropriate circumstances, opinions from nonexamining State agency medical consultants may be entitled to greater weight than the opinions of treating or examining sources. Id. at *3.

Oftentimes, as in this case, an ALJ must evaluate medical opinions and records tendered by both treating and non-treating sources. Judicial review of this aspect of ALJ decision-making is guided by several settled legal tenets. First, when presented with a disputed factual record, it is well-established that "[t]he ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations." Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011). Thus, "[w]here, . . . , the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Mason, 994 F.2d at 1066). Therefore, provided that the decision is accompanied by an adequate, articulated rationale, it is the province and the duty of the ALJ to choose which medical opinions and evidence deserve greater weight.

Further, in making this assessment of medical evidence:

> An ALJ is [also] entitled generally to credit parts of an opinion without crediting the entire opinion. See Thackara v. Colvin, No. 1:14–CV–00158–GBC, 2015 WL 1295956, at *5 (M.D. Pa. Mar. 23, 2015); Turner v. Colvin, 964 F. Supp. 2d 21, 29 (D.D.C. 2013) (agreeing that "SSR 96–2p does not prohibit the ALJ from crediting some parts of a treating source's opinion and rejecting other portions"); Connors v. Astrue, No. 10–CV–197–PB, 2011 WL 2359055, at *9 (D.N.H. June 10, 2011). It follows that an ALJ can give partial credit to all medical opinions and can formulate an RFC based on different parts from the different medical opinions. See e.g., Thackara v. Colvin, No. 1:14–CV–00158–GBC, 2015 WL 1295956, at *5 (M.D. Pa. Mar. 23, 2015).

Durden v. Colvin, 191 F.Supp.3d 429, 455 (M.D. Pa. 2016).

Similar considerations govern an ALJ's evaluation of lay testimony. When evaluating lay testimony regarding a claimant's reported degree of disability, we are reminded that:

> [T]he ALJ must necessarily make certain credibility determinations, and this Court defers to the ALJ's assessment of credibility. See Diaz v. Comm'r, 577 F.3d 500, 506 (3d Cir. 2009) ("In determining whether there is substantial evidence to support an administrative law judge's decision, we owe deference to his evaluation of the evidence [and] assessment of the credibility of witnesses...."). However, the ALJ must specifically identify and explain what evidence he found not credible and why he found it not credible. Adorno v. Shalala, 40 F.3d 43, 48 (3d Cir. 1994) (citing Stewart v. Sec'y of Health, Education and Welfare, 714 F.2d 287, 290 (3d Cir. 1983)); see also Stout v. Comm'r, 454 F.3d 1050, 1054 (9th Cir. 2006) (stating that an ALJ is required to provide "specific reasons for rejecting lay testimony"). An ALJ cannot reject evidence for an incorrect or unsupported reason. Ray v. Astrue, 649 F.Supp.2d 391, 402 (E.D. Pa. 2009) (quoting Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir. 1993)).

26

Zirnsak v. Colvin, 777 F.3d 607, 612–13 (3d Cir. 2014).

> Yet, it is also clear that:

> > Great weight is given to a claimant's subjective testimony only when it is supported by competent medical evidence. Dobrowolsky v. Califano, 606 F.2d 403, 409 (3d Cir. 1979); accord Snedeker v. Comm'r of Soc. Sec., 244 Fed.Appx. 470, 474 (3d Cir. 2007). An ALJ may reject a claimant's subjective testimony that is not found credible so long as there is an explanation for the rejection of the testimony. Social Security Ruling ("SSR") 96–7p; Schaudeck v. Comm'r of Social Security, 181 F.3d 429, 433 (3d Cir. 1999). Where an ALJ finds that there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the individual's pain or other symptoms, however, the severity of which is not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

McKean v. Colvin, 150 F.Supp.3d 406, 415–16 (M.D. Pa. 2015) (footnotes omitted).

Thus, we are instructed to review an ALJ's evaluation of a claimant's subjective reports of pain under a standard of review which is deferential with respect to the ALJ's well-articulated findings but imposes a duty of clear articulation upon the ALJ so that we may conduct meaningful review of the ALJ's conclusions.

In the same fashion that medical opinion evidence is evaluated, the Social Security Rulings and Regulations provide a framework under which the severity of a claimant's reported symptoms are to be considered. 20 C.F.R. §§ 404.1529, 416.929; SSR 16–3p. It is important to note that though the "statements of the

individual concerning his or her symptoms must be carefully considered, the ALJ is not required to credit them." Chandler, 667 F.3d at 363 (referencing 20 C.F.R. §404.1529(a) ("statements about your pain or other symptoms will not alone establish that you are disabled."). It is well-settled in the Third Circuit that "[a]llegations of pain and other subjective symptoms must be supported by objective medical evidence." Hantraft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999) (referring to 20 C.F.R. § 404.1529). When evaluating a claimant's symptoms, the ALJ must follow a two-step process in which the ALJ resolves whether a medically determinable impairment could be the cause of the symptoms alleged by the claimant, and subsequently must evaluate the alleged symptoms in consideration of the record as a whole. SSR 16-3p.

First, symptoms, such as pain or fatigue, will only be considered to affect a claimant's ability to perform work activities if such symptoms result from an underlying physical or mental impairment that has been demonstrated to exist by medical signs or laboratory findings. 20 C.F.R. §§ 404.1529(b), 416.929(b); SSR 16–3p. During the second step of this credibility assessment, the ALJ must determine whether the claimant's statements about the intensity, persistence or functionally limiting effects of his or her symptoms are substantiated based on the ALJ's evaluation of the entire case record. 20 C.F.R. § 404.1529(c), 416.929(c); SSR 16–

3p. This includes but is not limited to: medical signs and laboratory findings, diagnosis and other medical opinions provided by treating or examining sources, and other medical sources, as well as information concerning the claimant's symptoms and how they affect his or her ability to work. Id. The Social Security Administration has recognized that individuals may experience their symptoms differently and may be limited by their symptoms to a greater or lesser extent than other individuals with the same medical impairments, signs, and laboratory findings. SSR 16–3p.

Thus, to assist in the evaluation of a claimant's subjective symptoms, the Social Security Regulations identify seven factors which may be relevant to the assessment of the severity or limiting effects of a claimant's impairment based on a claimant's symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). These factors include: activities of daily living; the location, duration, frequency, and intensity of the claimant's symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate his or her symptoms; treatment, other than medication that a claimant has received for relief; any measures the claimant has used to relieve his or her symptoms; and, any other factors concerning the claimant's functional limitations and restrictions. Id.; see George v. Colvin, No. 4:13–CV–2803, 2014 WL 5449706, at *4 (M.D. Pa. Oct. 24, 2014); Koppenaver v. Berryhill, No. 3:18-CV-1525, 2019

WL 1995999, at *9 (M.D. Pa. Apr. 8, 2019), <u>report and recommendation adopted sub nom.</u> <u>Koppenhaver v. Berryhill</u>, No. 3:18-CV-1525, 2019 WL 1992130 (M.D. Pa. May 6, 2019); <u>Martinez v. Colvin</u>, No. 3:14-CV-1090, 2015 WL 5781202, at *8–9 (M.D. Pa. Sept. 30, 2015).

### D. <u>The ALJ's Decision in this Case is Supported by Substantial Evidence.</u>

In this setting, we are mindful that we are not free to substitute our independent assessment of the evidence for the ALJ's determinations. Rather, we must simply ascertain whether the ALJ's decision is supported by substantial evidence, a quantum of proof which is less than a preponderance of the evidence but more than a mere scintilla, <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971), and "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Pierce v. Underwood</u>, 487 U.S. 552, 565 (1988). Judged against these deferential standards of review, we find that substantial evidence supported the decision by the ALJ that Bonner could perform a limited range of sedentary work and was not disabled.

### 1. <u>The ALJ Did Not Err in Considering Opinions of the Treating Physicians of Record</u>

Bonner's first claim of error, challenges the ALJ's consideration of the

opinion evidence of her treating physicians. (Doc. 1 p. 8). Specifically, Bonner argues that the ALJ failed to give adequate weight to the opinions of Nurse Practitioner Peterson, Dr. Nase, and Dr. Ingrid Ockenhouse—the unknown medical source of record. (Doc. 11 p. 9). Bonner argues:

> All of these primary treatment providers opined that Plaintiff has significant work-related limitations and that she cannot perform substantial gainful work. The ALJ generally discredited these opinions as being inconsistent with the record. To the contrary, these medical opinions are undoubtedly both supported by the objective medical evidence and consistent with the other information in the file. As outlined in more detail in the Statement of Facts, the records of Plaintiff's treating physicians provide significant support by consistently notating her symptoms.

(Doc. 11 p. 9).

With regard to the ALJ's assignment of "little" weight to Dr. Ockenhouse's opinion because he was unable to identify the provider, Bonner contends:

> The ALJ completely disregarded a medical statement provided by Dr. Ingrid Ockenhouse (D26F), indicating that he could not identify the provider by the signature but he did not reach out to the undersigned or claimant for clarification. Dr. Ockenhouse is a primary treatment provider for Plaintiff and this could have easily been ascertained if any effort was made into determining the author of the statement.

(Doc. 11 p. 10).

In response, the Commissioner argues that the ALJ provided legally and factually sufficient reasons for the weight he afforded to the opinions of Nurse Practitioner Peterson, Dr. Nase, and Dr. Osckenhouse. (Doc. 15 p. 16). Thus, the

Court should not reweigh the evidence as requested by Bonner. (Id.).

It is clear beyond peradventure that the ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations. Chandler, 667 F.3d at 361. The ALJ is charged with a duty to evaluate all the medical opinions in the record under the factors set forth in the regulations and to resolve any conflicts. 20 C.F.R. § 404.1527. An ALJ may give an opinion less weight or no weight if it does not present relevant evidence or a sufficient explanation to support it, or if it is inconsistent with the record as a whole. 20 C.F.R. § 404.1527(c). The ALJ may choose which medical evidence to credit and which to reject as long as there is a rational basis for the decision. Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999).

"A cardinal principal guiding disability eligibility determinations is that the ALJ accord treating physicians reports great weight, especially when their opinion reflect expert judgement based, on a continuing observation of the patient's condition over a prolonged period of time." Morales, 225 F.3d at 317. However, a "treating source's opinion is not entitled to controlling weight if it is 'inconsistent with the other substantial evidence in [the] case record. Scouten v. Comm'r Soc. Sec., 722 F. App'x 288, 290 (3d Cir. 2018) (alteration in original (quoting 20 C.F.R. § 404.1527(c)(2)).

32

Contrary to Bonner's contentions, the Court finds that substantial evidence supports the ALJ's consideration of medical sources—Nurse Practitioner Peterson, Dr. Nase, and Dr. Ockenhouse. In this case, the ALJ was confronted by a record marked by contrasting medical opinions and inconsistencies regarding Bonner's abilities and limitations. Reconciling the discordant and conflicting threads of evidence, the ALJ assigned "little" weight to the opinions of Nurse Practitioner Peterson, Dr. Nase, and Dr. Ockenhouse. (Tr. 25). In this case, the ALJ considered the opinion of Nurse Practitioner Peterson and accorded his opinion "little" weight. (Id.). The ALJ reasoned that Nurse Practitioner Peterson's opinion that Bonner was temporarily disabled until October 1, 2016, was provisional and therefore not indicative of her RFC. (Id.). The ALJ further explained that Nurse Practitioner Peterson's opinion did not provide supportive limitations concerning the most that Bonner could still do, despite her limitations. (Id.). Thus, the ALJ accorded "little" weight to Nurse Practitioner Peterson's opinion.

The ALJ considered the medical assessment form completed by Dr. Nase and accorded it "little" weight. (Id.). The ALJ reasoned that Dr. Nase's conclusions that Bonner was permanently disabled was inconsistent with the record, particularly Bonner's negative findings, daily activities, and limited treatment protocol demonstrated in the record. (Id.). Additionally, the ALJ explained that Dr. Nase did

not provide supportive limitations, such as a function-by-function breakdown of the most Bonner could do despite her alleged limitations. (Id.).

While the ALJ could not identify Dr. Ockenhouse's signature on the January 2018 medical source statement, the ALJ nonetheless considered it. (Id.). The ALJ, however, accorded "little" weight to Dr. Ockenhouse's opinion explaining that the limitation to the medium exertional level was inconsistent with Bonner's structural abnormalities, pain, and obese body habitus. (Id.). The ALJ further explained that the he could not identify the provider, thus could not verify his or her qualifications or treatment history with Bonner, both of which were vital in assigning weight to a medical opinion. (Id.).

The ALJ further considered the Psychiatric Review Technique Assessment and the Mental Residual Functional Capacity Statement prepared by Dr. Murphy, affording both assessments great weight. (Tr. 24). The ALJ reasoned that Dr. Murphy's findings were consistent with the record, as detailed in the "paragraph B" criteria analysis set forth in the record. (Id.). The ALJ further explained that Dr. Murphy's opinion effectively balanced the claimant's negative and positive medical findings. (Id.).

Lastly, the ALJ considered the RFC statement prepared by Dr. Bonita and accorded it some weight. (Id.). The ALJ reasoned that while he recognizes Bonner's

need for restrictions, Dr. Bonita's limitation to work at the light exertional level was inconsistent with the record and somewhat overstated Bonner's capabilities. (Id.). The ALJ concluded that Bonner's structural abnormalities, pain, and obese body habitus supported limiting Bonner to less than a full range of sedentary work. (Tr. 25).

The ALJ discounted the opinions of Nurse Practitioner Peterson, Dr. Nase, and Dr. Ockenhouse in light of these contrasting medical opinions and findings, but given other record evidence, including Bonner's own statements. For example, Bonner testified that she was incapable of sitting longer than 20 minutes or standing longer than ten minutes. (Tr. 42). She further reported that her physical and mental impairments affect her ability to lift, squat, bend, reach, kneel, hear, see, climb stairs, retain information, complete tasks, concentrate, and use her hands. (Tr. 242). There were some internal inconsistencies in Bonner's report, however, as she also described her daily activities in terms that were not wholly disabling. For example, Bonner reported that she could care for most of her personal needs, prepare light meals, perform light household chores, drive, shop in stores and online, pay bills, handle a checking account, manage her own healthcare, watch television, spend time on social media, paint her nails, and spend time with her husband. (Tr. 237- 44).

Bonner argues that the ALJ disregarded the medical source statement

provided by Dr. Ockenhouse and that his reasoning—stating that the signature of Dr. Ockenhouse was illegible, was erroneous because he should have reached out to the undersigned or claimant for clarification. (Id.). Bonner's contentions on this score, however, are unavailing. As correctly asserted by the Commissioner, despite his inability to identify Dr. Ockenhouse's signature on the January 2018 medical source statement, the ALJ considered Dr. Ockenhouse's opinion and explained the weight he afforded the opinion with supporting rationale. (Tr. 25). Therefore, the ALJ's assessment of Dr. Ockenhouse's opinion complied with the dictates of the law, and thus is supported by substantial evidence, and we will not disturb the ALJ's determination as to this issue on appeal.

In a case such as this where the "ALJ provide[s] sufficient reasons for the weight given to the evidence from [a] . . . treating physician[]," which reasons, in most cases can be set forth in a sentence or short paragraph, there is no basis for disturbing the ALJ's weight determination. Sponheimer v. Comm'r of Soc. Sec., 734 F. App'x 805, 807 (3d Cir. 2018). The Plaintiff's argument simply asks the court to re-weigh the evidence, which this court cannot do. Rutherford, 399 F.3d at 552 ("In the process of reviewing the record for substantial evidence, we may not 'weigh the evidence or substitute our own conclusions for those of the fact-finder.'" (quoting Williams, 970 F.2d at 1182). Because the Court cannot re-weigh the evidence, we

find the ALJ has not erred in assigning "little" weight to the opinions of Nurse Practitioner Peterson,[4] Dr. Nase, and Dr. Ockenhouse.

### 2. <u>Substantial Evidence Supports the ALJ's RFC Assessment</u>

Bonner's final contention, challenges the ALJ's RFC assessment. Specifically, Bonner argues that the ALJ erred by failing to include several limitations supported by the medical evidence in her RFC. (Doc. 11 p. 11). Bonner asserts that the medical evidence supports greater postural limitations due to her various severe pain conditions. (<u>Id</u>.). Bonner further argues that the ALJ assessed an RFC with no limitations relating to her mental health impairments, including her anxiety, depression, PTSD, and panic disorder, which the ALJ concluded were severe impairments. (<u>Id</u>.). Specifically, Bonner argues:

> The evidence revealed consistent symptoms of depression, anxiety, paranoia, repetitive behaviors, irritability, distractibility, fatigue, poor concentration, feelings of worthlessness, sleep disturbance, mood swings, feeling down, little interest or pleasure, delusions, racing thoughts, excessive, disheveled appearance, and isolation. D23F, D24F, D20F, D3F.

(Doc. 11 p. 12).

---

[4] Further we are constrained to observe that under the then-existing regulations: "Nurse practitioners . . . are not 'acceptable medical sources' that can 'establish ... a medically determinable impairment' 20 C.F.R. § 404.1513(a)," <u>Roache v. Colvin</u>, 170 F. Supp. 3d 655, 672 (D. Del. 2016), a factor which further undermines the reliance that can be placed upon Nurse Practitioner Peterson's opinions.

Further, Bonner contends that the ALJ failed to include limitations in the RFC

related to her pain and fatigue, such as reduced concentration or attention or stamina

for full-time work. Bonner asserts:

> Plaintiff suffers from chronic pain from various sources including back
> pain with radiculopathy, cervical pain, bilateral wrist pain, abdominal
> pain and endometriosis, and bilateral knee pain. She testified that pain
> limits her activities, she does not bother with personal care, has to
> alternate her positions, has difficulty concentrating, gets daily
> headaches, has difficulty walking down stairs, and that she spends a lot
> of time in bed. Social security policy directs that testimony of disabling
> pain be given serious consideration where the claimant has established
> the pain is associated with a medically determined impairment. SSR
> 96-7p; 20 C.F.R. § 404.1529. The ALJ included the ability to perform
> simple tasks in the RFC but failed to account for limitations in
> concentration, persistence, or pace.

(Doc. 11 p. 12). In support of her arguments, Bonner relies on case law asserting that

the RFC must be based on a consideration of *all* the evidence in the record, including

the testimony of the claimant regarding her activities of daily living, medical records,

lay evidence and evidence of pain. (Doc. 11 p. 10). Bonner further contends:

> A vocational expert's testimony concerning a claimant's ability to
> perform alternative employment may only be considered for purposes
> of determining disability if the questions accurately portray the
> claimant's individual physical and mental limitations. Podedworny v.
> Harris, 745 F.2d 210, 210 (3d Cir. 1987). The Third Circuit Court of
> Appeals has held that to accurately portray a claimant's impairments,
> the ALJ must include all "credibly established limitations" in the
> hypothetical. Rutherford v. Barnhart, 399 F.3d 546, 554 (3d Cir.
> 2005)(citing Plummer v. Apfel, 186 F.3d 422, 431 (3d Cir. 1999)).
> Courts have recognized the ability to perform simple tasks as distinct

from the ability to stay on task and only the latter would account for limitations in concentration, persistence, or pace. Batdorf v. Colvin, 206 F. Supp.3d 1012, 1025-1026 (M.D. Pa. 2016)(citing Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015)). If the ALJ's hypothetical question to the vocational expert does not accurately convey all of Plaintiff's impairments and limitations, a decision denying benefits cannot be considered to be supported by substantial evidence. Ramirez v. Barnhart, 372 F.3d 546 (3d Cir. 2004).

(Doc. 11 p. 10-11).

In response, the Commissioner correctly notes that the ALJ afforded Bonner with a generous RFC that accounted for her physical and mental limitations supported by the record. (Doc. 15 p. 21). The Commissioner avers that Bonner provided no record support for greater postural limitations than those imposed here, and that the ALJ explained that greater limitations concerning her mental health impairments were not included because her mental status exams revealed relatively normal findings. (Doc. 15 p. 24).

Assessing a claimant's RFC falls within the purview of the ALJ. 20 C.F.R. § 404.1546(c); SSR 96-8p, 1996 WL 374184 (S.S.A. July 2, 1996). "[RFC] is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" Burnett, 220 F.3d at 121 (quoting Hartranft v. Apfel, 181 F.3d 358, 359 (3d Cir. 1999)). Specifically, one's RFC reflects the *most* that an individual can still do, despite his or her limitations, and is used at steps four and five to evaluate the claimant's case. 20 C.F.R. §§ 404.1520, 404.1545; SSR 96-8P, 1996 WL 374184

at *2. In crafting the RFC, the ALJ must consider all the evidence of record, including medical signs and laboratory findings, daily activities, medical source statements, and a claimant's medical history. SSR 96-8p, 1996 WL 374184, at *5; see also Mullin v. Apfel, 79 F. Supp. 2d 544, 548 (E.D. Pa. 2000). An ALJ's RFC findings, however, must be supported by the medical evidence. Doak v. Heckler, 790 F.2d 26, 28 (3d Cir. 1986). "[O]nce the ALJ has made this [RFC] determination, [a court's] review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence." Black v. Berryhill, No. 16-1768, 2018 WL 4189661 at *3 (M.D. Pa. Apr. 13, 2018).

As correctly stated by Bonner, "a hypothetical question posed to the vocational expert must reflect *all* of the claimant's impairments that are supported by the record; otherwise the question is deficient and the [vocational] expert's answer to it cannot be considered substantial evidence. Chrupcala v. Heckler, 829 F.2d at 1269, 1276 (3d Cir. 1987); see also Rutherford, 399 F.3d at 554; Ramirez, 372 F.3d at 552-55; Podedworny,745 F.2d at 218. The ALJ, however, is not required to submit to the vocational expert every impairment alleged by a claimant. Rutherford, 399 F.3d at 554. "[S]uch references to 'all impairments' encompass only those that are medically established." (Id.).

Applying the above standard to the present record, the Court finds substantial evidence to support the ALJ's RFC determination. Here, the ALJ considered Bonner's physical and mental impairments in crafting the RFC, including Bonner's degenerative disc disease, radiculopathy, sacroiliitis, carpal tunnel syndrome, degenerative joint disease of the left knee, enthesopathy of the hip region, history of Charcot-Marie Tooth disorder, obesity, hypothyroidism, PTSD, depression, anxiety, panic disorder, and borderline traits. (Tr. 18). The ALJ explained, however, that despite evidence of severe physical and mental impairments, the objective medical evidence revealed an L5-S1 posterior disk bulging with no evidence of spinal cord compression, minimal tenderness in the lower lumbar spine, a positive FABERS test on the right, and a limited range of motion. (Tr. 23, 1181). The ALJ further explained that the medical record revealed that Bonner exhibited 5/5 strength in all major muscle groups, intact sensation, normal reflexes, a normal gait, a normal range of motion in the right hip, and that Bonner had undergone a series of injections and radiofrequency ablation, which proved successful. (Tr. 514). With regard to Bonner's mental health impairments, the ALJ explained that the medical record demonstrated relatively normal mental status findings, including that Bonner exhibited coherent thought processes, a normal attitude and affect, good insight,

normal thought content, intact recent and remote memory, and intact cognitive functioning. (Tr. 878, 1071-72, 2053).

The ALJ also carefully considered the opinion evidence of record, including the opinions of Dr. Nase, Dr. Bonita, Nurse Practitioner Peterson, Dr. Ockenhouse, and Dr. Murphy. (Tr. 24-25). The ALJ, however, was confronted by a record marked by contrasting medical opinions and inconsistencies regarding Bonner's abilities and physical and mental limitations. For example, in June 2015, Dr. Nase opined that Bonner was permanently disabled; in January 2016, Dr. Bonita opined that Bonner could perform a range of light work; in May 2016, Nurse Practitioner Peterson opined that Bonner was temporarily disabled until October 1, 2016; and in January 2018, Dr. Ockenhouse opined that Bonner could perform a range of medium work. (Tr. 24-25). As to Bonner's mental health impairments, in the Psychiatric Review Technique Assessment, Dr. Murphy opined that Bonner had mild limitations in her activities of daily living, moderate limitations in maintaining concentration, persistence, or pace, and no limitations in social functioning and episodes of decompensation, each of extended duration. (Tr. 131-32). Additionally, in the Mental Residual Functional Capacity Assessment, Dr. Murphy opined that Bonner had no limitations in the categories of understanding and memory, social interaction, and adaption, but had moderate limitations in the category of sustained concentration

and persistence. (Tr. 24, 135-36). Reconciling these discordant and conflicting threads of evidence, the ALJ confined Bonner to a limited range of sedentary work with additional limitations.

Lastly, the ALJ considered other evidence in crafting the RFC, including Bonner's own statements. For example, Bonner testified that she was incapable of sitting longer than 20 minutes or standing longer than ten minutes. (Tr. 42). She further reported that her physical and mental impairments affected her ability to lift, squat, bend, reach, kneel, hear, see, climb stairs, retain information, complete tasks, concentrate, and use her hands. (Tr. 242). However, despite alleging disabling symptoms stemming from her physical and mental impairments, Bonner described her daily activities in terms that were not wholly disabling. For example, Bonner reported that she could care for most of her personal needs, prepare light meals, perform light household chores, drive, shop in stores and online, pay bills, handle a checking account, manage her own healthcare, watch television, spend time on social media, paint her nails, and spend time with her husband. (Tr. 237- 44).

Bonner argues that the ALJ failed to include several limitations supported by the medical evidence in the RFC concerning her physical impairments. (Doc. 11 p. 11). Specifically, Bonner contends that the ALJ erroneously concluded that she could occasionally balance, stoop, kneel, crouch, crawl, climb ladders, ramps, ropes,

scaffolds, and stairs. (Id.). Bonner asserts that the evidence supports greater postural limitations due to her various severe pain conditions. (Id.). We find that Bonner's contentions on this score are unavailing. At the outset, while Bonner argues that the record supports greater postural limitations, she fails to indicate the postural limitations that should have been included in the RFC and fails to provide any evidentiary support demonstrating the need for additional postural limitations.

As for her mental health impairments, Bonner argues that the ALJ crafted the RFC, but included no limitations relating to her mental health conditions. (Doc. 11 p. 11-12). Bonner asserts that the ALJ crafted the RFC, but failed to include limitations regarding her pain and fatigue, such as reduced concentration or attention or stamina for full-time work. (Doc. 11 p. 12). Specifically, Bonner argues that the ALJ failed to account for her moderate limitations in concentration, persistence, or pace. (Id.). The Court, however, is not persuaded by Bonner's argument as to this issue.

First, the ALJ included limitations in the RFC to address Bonner's mental health impairments. For example, the ALJ restricted Bonner to a limited range of sedentary work with additional limitations. (Tr. 22). For example, the ALJ limited Bonner "to unskilled work involving only simple, routine tasks that are not performed at a production rate pace." (Id.). Bonner argues that the severity of her

mental impairments require additional limitations, however she fails to indicate the additional limitations that should have been included in the RFC and fails to provide any record evidence supporting the need for additional limitations. Further, with regard to the record findings that Bonner has moderate limitations in concentration, persistence, or pace, it is longstanding precedent in this circuit, that limiting a claimant with moderate limitations in concentration, persistence, or pace to "simple, routine tasks" is adequate when formulating the RFC. McDonald v. Astrue, 293 Fed. Appx 941, 946-47 (3d Cir. 2008). Thus, given the Court's limited role at this stage of review, there is sufficient—more than a "scintilla," evidence to substantiate the ALJ's RFC determination.

In closing, the ALJ's assessment of the evidence in this case complied with the dictates of the law and was supported by substantial evidence. This is all that the law requires, and all that a claimant can demand in a disability proceeding. Thus, notwithstanding the argument that this evidence might have been viewed in a way which would have also supported a different finding, we are obliged to affirm this ruling once we find that it is "supported by substantial evidence, 'even [where] this court acting de novo might have reached a different conclusion.'" Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190–91 (3d Cir. 1986) (quoting Hunter Douglas, Inc. v. NLRB, 804 F.2d 808, 812 (3d Cir. 1986)). Accordingly, under the deferential

standard of review that applies to appeals of Social Security disability determinations, we find that substantial evidence supported the ALJ's evaluation of this case.

## IV.    <u>**Conclusion**</u>

Accordingly, for the foregoing reasons, IT IS ORDERED that the final decision of the Commissioner denying these claims is AFFIRMED.

An appropriate order follows.

<u>/s/ *Martin C. Carlson*</u>
Martin C. Carlson
United States Magistrate Judge

Submitted this 17th day of July, 2020